UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RAUL CORDERO, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LUMENIS INC.,<br><br>Defendant. | Case No.  5:15-cv-03164-HRL<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO APPROVE SETTLEMENT**<br><br>Re: Dkt. No. 72 |

    Eric Ballard filed this lawsuit on behalf of himself and others similarly situated, alleging a sole claim for violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq.  Ballard and the collective members are current and former service engineers of defendant Lumenis, Inc. (Lumenis), a medical device manufacturer that markets lasers and light-based technology.  They claimed that they were improperly classified as exempt from overtime pay.  The court is told that in classifying the service engineers as exempt, Lumenis relied on the outside sales exemption, claiming that the engineers' primary duty is making sales.  Plaintiffs maintain that they are responsible for performing on-site installation and maintenance of the laser equipment and that such duties are not sales activities.

    The court approved the parties' stipulation to conditional certification, and notice was distributed to 54 putative class members.  Of those 54, 7 opted to join this suit.  All parties

1   expressly consented that all proceedings in this matter may be heard and finally adjudicated by the
2   undersigned. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

3       Following an unsuccessful mediation, Lumenis says it served offers of judgment pursuant
4   to Fed. R. Civ. P. 68. Plaintiffs dispute whether the offers actually complied with Rule 68.
5   Nevertheless, 5 of the opt-ins accepted those offers, leaving 2 opt-ins in the case: Raul Cordero
6   and Howard Griffin.

7       The court subsequently granted plaintiffs' motion to amend the complaint to replace
8   original plaintiff Ballard with opt-in plaintiff Cordero and to add Cordero's New York state labor
9   law claims.

10      Meanwhile, Lumenis moved to disqualify plaintiffs' counsel, claiming that they sent a
11  misleading letter to the non-opt-ins. That motion was denied as to Cordero and Howard. At the
12  court's suggestion, however, plaintiffs' counsel agreed that neither he nor his firm would represent
13  any of the non-opt-ins in wage and hour lawsuits against Lumenis. Additionally, while the court
14  found that the subject letter was misleading, a corrective notice would be sufficient to cure any
15  misunderstanding. The parties subsequently submitted an agreed-upon form of corrective notice,
16  which the court approved for distribution to the non-opt-ins.

17      Lumenis says that the corrective notice was never sent because the parties agreed to a
18  settlement shortly afterward. The settlement agreement provides for payment of $150,000, to be
19  apportioned as follows: $59,960.68 to Cordero, $35,690.68 to Griffin, and $54,348.64 to
20  plaintiffs' counsel (the Nichols Kaster firm) for attorneys' fees and costs. (Dkt. 72-1, Dkt. 74
21  Helland Decl. Exh. A, ¶ 5.) The payments to Cordero and Griffin will be treated as 50% wages
22  reportable on a form W-2, and 50% liquidated damages and interest, reportable on a form 1099.
23  (Id.) Lumenis will pay the employer's share of payroll taxes on the wage portion of the
24  settlement. (Id.) The agreement also includes a mutual general release. (Id. ¶ 6.)

25      Plaintiffs now move for approval of the settlement and for dismissal of this action with
26  prejudice. The motion is largely unopposed; and, on the whole, both sides agree that the court
27  should approve the settlement and dismiss this case. The only disputed point is whether a
28  confidentiality clause in the settlement agreement should be stricken (plaintiffs' argument) or

upheld (Lumenis' position).[1]  Specifically, defendant wants the settlement amounts to be confidential.  Plaintiffs are willing to abide by portions of the clause prohibiting them from publicizing the settlement.  Otherwise, they contend that sealing the terms of an FLSA settlement is improper.

As a practical matter, the cat is already out of the bag.  According to plaintiffs, in view of caselaw in this district, it was agreed that the settlement agreement would not be filed under seal.  Thus, Lumenis requests that if the confidentiality clause is upheld, then the settlement amounts should be retroactively redacted.  Plaintiffs maintain that nothing should be redacted from what is already part of the public record.

Upon consideration of the moving and responding papers, as well as the arguments of counsel, this court grants plaintiffs' motion to approve the settlement, strikes the confidentiality clause, with the exception of the non-publicity language plaintiffs propose.

## DISCUSSION

"The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours." Lynn's Food Stores, Inc. v. U.S. By and Through U.S. Dep't of Labor, 679 F.2d 1350, 1352 (11th Cir. 1982) (citing Barrentine v. Arkansas-Best Freight Sys. Inc., 450 U.S. 728, 101 S. Ct. 1437, 1444, 67 L.Ed.2d 641 (1981)).  "An employee's claims under FLSA are nonwaivable and may not be settled without supervision of either the Secretary of Labor or a district court." Luo v. Zynga, Inc., No. 13–cv–00186 NC, 2014 WL 457742 at *2 (N.D. Cal., Jan. 31, 2014); Lynn's Food Stores, Inc., 679 F.2d at 1352-53.  In scrutinizing the settlement for fairness, the court must determine whether the settlement "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." Lynn's Food Stores, Inc., 679 F.2d at 1355.  If the settlement is a reasonable compromise of issues in dispute, the court "may approve the settlement in order to promote the policy of encouraging settlement of litigation." Id. at 1354.

---

[1] In negotiating the clause, it was agreed that plaintiffs could challenge the enforceability of the clause in conjunction with a motion seeking approval of the settlement.  The confidentiality clause is severable from the remainder of the settlement agreement. (Helland Decl., Ex. A ¶¶ 11, 15).  Thus, whether or not the clause is upheld, the remainder of the settlement will not be affected.

United States District Court
Northern District of California

### A. The Settlement is a Fair and Reasonable Resolution

This case concerns issues of FLSA coverage and potential liability, which constitutes bona fide disputes. Based on plaintiffs' analysis, Cordero's net settlement payment is 99% of his claimed damages, and Griffin's net settlement payment is over 80% of his claimed damages (based on a 3-year FLSA limitations period) and $10,000 more than his claimed damages (based on a 2-year FLSA limitations period). (Dkt. 72-1, Helland Decl. ¶¶ 8-9). This settlement appears to be reasonable in view of litigation risks inherent in litigating Lumenis' exemption defense, potential disputes over the accuracy of Lumenis' time records, potential disputes as to whether all of plaintiffs' claimed travel time was compensable, Lumenis' prior (disputed) Fed. R. Civ. P. 68 offers, and Griffin's potential exposure over a statute of limitations issue and a prior severance agreement he signed (Lumenis apparently took the position that he breached that agreement in proceeding with the instant litigation). By settling, each side has chosen to avoid the risk and expense of trial. The court finds that the settlement is a fair and reasonable resolution of bona fide disputes under the FLSA.

As previewed above, the settlement agreement contains broad general releases. Courts usually reject settlements requiring plaintiffs to broadly release claims going beyond the FLSA violations alleged in the complaint. See, e.g., McKeen-Chaplin v. Franklin Am. Mortgage Co., No. C10-05243 SBA, 2012 WL 6629608 at *3 (concluding that a settlement provision releasing the defendant from all claims, including claims that are unrelated to those asserted in the complaint, are improper in FLSA settlements). "This is not to say that employees may never agree to ancillary terms when settling FLSA claims; but the court should closely scrutinize the fairness of such 'side deals' because they do not directly relate to any bona fide dispute over FLSA coverage or wages due." Hogan v. Allstate Beverage Co., 821 F. Supp.2d 1274, 1282 (M.D. Ala. 2011).

Pointing out that the settlement agreement includes a mutual release by Lumenis, plaintiffs urge this court to not to reject the settlement. Here, they state that the mutual release was an important settlement term for them---particularly for Griffin, whom Lumenis threatened to countersue for alleged breach of his prior severance agreement. Plaintiffs' counsel attests that he

advised his clients about the scope of the general release and that both plaintiffs wanted a mutual release, concluding that "it was worth executing a general release in order to obtain a mutual release from Lumenis." (Helland Decl. ¶ 13). Thus, unlike many cases in which the plaintiffs unilaterally released claims without demonstrating that they were advised about the scope of the release or that they were independently compensated for the release, Cordero and Howard have demonstrated that they were advised about what they were releasing and that they considered a mutual release to be adequate consideration for agreeing to a general release. While the scope of the release is broad, under the circumstances presented, the court finds that it constitutes a fair and reasonable resolution.

### B.     Attorneys' Fees and Costs

The FLSA provides that the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). In this case, the settlement agreement provides for $50,000 in fees and $4,348.64 in costs, for a total of $54,348.64. (Helland Decl., Ex. A ¶ 5).

The fees to be paid constitute 30% of the total settlement amount. Plaintiffs' counsel acknowledges that this figure exceeds the 25% benchmark applied in the Ninth Circuit, but nonetheless argue that the benchmark does not apply to non-class actions. Whether or not the 25% limit applies, this court finds reasonable grounds for allowing a 30% fee award here.

In addition to payment of costs, plaintiffs signed a legal service agreement authorizing a contingency fee of one-third of any settlement. (Helland Decl. ¶ 16). See Ambrosino v. Home Depot U.S.A., Inc., No. 11cv1319 L(MDD), 2014 WL 3924609, at *2 (S.D. Cal. Aug. 11, 2014) (approving 33.3% attorneys' fees where "each plaintiff has approved this amount."). Additionally, because the case was taken on a contingency basis, plaintiffs' counsel was not compensated for the time they spent litigating this matter or reimbursed for their out-of-pocket costs. (Helland Decl. ¶ 15). They therefore undertook the financial risk of unsuccessful litigation. Although this case has been pending for just over a year, there was a considerable amount of activity in a relatively short time period. The parties negotiated and agreed to conditional certification. They participated in a mediation. And, plaintiffs' counsel avers that the parties engaged in substantial discovery.

(Helland Decl. ¶ 4). Several disputes required court intervention, including a dispute over plaintiffs' desire to amend their complaint, defendant's motion to disqualify plaintiffs' counsel, and discovery matters. Moreover, the lodestar amount, "which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir. 2002). Here, counsel attests the claimed fee amount is below the lodestar which---even excluding time billed prior to the resolution of the first 5 members' claims and the time spent on defendant's motion to disqualify---"substantially exceeds $75,000." (Helland Decl. ¶ 18). Accordingly, the court finds the requested $50,000 in fees to be reasonable.

As for the $4,348.64 in costs, counsel avers that the amount claimed is well below the $9,314.97 that his firm actually incurred. (Id. ¶¶ 16-17 and Ex. E). The court finds the requests for costs is adequately documented and reasonable.

### C.     Confidentiality Clause

The only disputed point with respect to the settlement is whether the settlement terms---specifically, the settlement amounts---should be confidential.

"Unlike in other areas of the law, where settlement agreements commonly remain confidential, FLSA agreements are filed with the court and become judicial records. They are therefore subject to a strong presumption in favor of public access, which cannot be overcome absent compelling reasons." Duran v. Hershey Co., No. 14-cv-01184-RS, 2015 4945931 at *1 (N.D. Cal., Aug. 10, 2015) (citing Kamakana v. City & Cnty. of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006)); see also Luo v. Zynga, Inc., No. 13-cv-00186-NC, 2013 WL 5814763 at *2 (N.D. Cal., Oct. 29, 2013) ("While there is no specific Ninth Circuit guidance, most district courts considering a motion to seal in connection with a motion to approve settlement of FLSA claims have applied a presumption of public access.") (citing cases). "This presumption is bolstered in FLSA cases because 'the public has an independent interest in assuring that employees' wages are fair.'" Duran, 2015 4945931 at *1 (quoting Bouzzi v. F & J Pine Rest., LLC, 841 F.Supp.2d 635, 639 (E.D.N.Y.2012)).

Lumenis, which bears the burden of persuasion, has failed to present sufficient grounds for

sealing the settlement terms.  Citing King v. MS Companies, LLC, No. 2:13-cv-02277-MHH, 2015 WL 3657649 (N.D. Ala., June 12, 2015), Lumenis argues that because only 2 plaintiffs remain, the instant litigation is not truly a collective action and does not implicate any public interest.  King concerned a total of 3 contingent workers at defendant's facility who claimed that they were not paid the proper straight time or overtime.  There, the court upheld the confidentiality provision of the parties' settlement agreement based on representations that the alleged violations were an isolated incident involving only 3 employees and that all managers involved in the payment dispute had left the company.  Id. at *3.  By contrast, when viewed in proper context, the present litigation cannot be characterized as one arising out of discrete or isolated conduct. Rather, plaintiffs allege a practice that affects an entire sector of Lumenis' nationwide workforce, including 47 other service engineers who are not covered by this lawsuit.  Moreover, "[m]any district courts . . . have declined to seal settlement agreements in wage and hour actions by individual plaintiffs."  Duran, 2015 WL 4945931 at *2 n.2 (citing cases).

Lumenis next argues that district courts have approved settlements after conducting an *in camera* review to preserve confidentiality of the terms.  The two cases Lumenis cites, however, are completely devoid of any analysis on the sealing issue and are therefore not persuasive.[2]  See Nunnink v. Wholesale Pictures & Mirrors, LLC, No. 2:09-cv-365-FtM-36-SPC, 2010 WL 338098 (M.D. Fla., Jan. 22, 2010); Ammirati v. Lutheran Servs. Florida, Inc., No. 2:09-cv-496-FtM-29SPC, 2010 WL 148724 (M.D. Fla., Jan. 13, 2010).

Recalling the earlier dispute over Lumenis' motion to disqualify plaintiffs' counsel, defendant nevertheless contends that sealing the settlement agreement will prevent plaintiffs and their counsel from misrepresenting the terms of their settlement.  Plaintiffs, however, agree not to publicize their settlement.  In any event, the court fails to see the logic of defendant's argument.  If

---

[2] Lumenis cites two other cases in which the courts approved confidentiality provisions prohibiting the plaintiffs from discussing the settlement with the media.  See McGee v. Ann's Choice, Inc., No. 12-2664, 2014 WL 2514582 (E.D. Pa., June 4, 2014); In re Chickie's & Pete's Wage & Hour Litig., No. 12-6820, 2014 WL 911718 (Mar. 7, 2014).  As discussed above, however, Cordero and Howard agree not to publicize their settlement.  More to the point, neither of the confidentiality provisions in McGee or In re Chickie's & Pete's required the settlements to be sealed.

1    anything, keeping the settlement agreement in the public record would provide a better check on

2    any desire to misrepresent its terms, than placing those matters under seal from public scrutiny.

3          Equally puzzling is Lumenis' contention that sealing the settlement agreement will protect

4    plaintiffs' interests.  Here, defendant says that enforcing the confidentiality clause will impose a

5    mutual prohibition on disclosure and prevent defendant from using the agreement to discourage

6    other service engineers from asserting their FLSA rights against the company.  It is not clear how

7    this provides any sort of protection of plaintiffs' interests.  Moreover---and putting aside

8    defendant's troubling suggestion that it might consider means of discouraging its workers from

9    asserting their FLSA rights---it is not apparent how the settlement agreement calling for a result

10   that plaintiffs characterize as "close to their best day in trial" will discourage other service

11   engineers from pursuing overtime claims.

12         Although Lumenis does not expressly say so, to the extent it fears other similar lawsuits,

13   that does not overcome the presumption to public access.  Duran, 2015 WL 4945931 at *2 ("A

14   defendant's fear of 'copy-cat lawsuits' does not overcome the presumption of public access.");

15   Smith v. Golden Gate, LLC, No. 1:13-cv-01319-AWI-MJS, 2015 WL 2340231 at *1 (E.D. Cal.,

16   May 13, 2015) ("However, [t]he mere fact that the production of records may lead to a litigant's

17   embarrassment, incrimination, or exposure to further litigation will not, without more, compel the

18   court to seal its records.") (citation omitted); Luo, 2013 WL 5814763 at *3 ("Moreover, [a] litigant

19   is not entitled to the court's protection from exposure to additional liability and litigation.")

20   (citation omitted).

21         Accordingly, plaintiffs' request to strike the confidentiality clause is granted, except that

22   portions of the clause prohibiting plaintiffs from publicizing their settlement will be maintained as

23   proposed by plaintiffs:

> Plaintiffs and their counsel shall not respond to, or in any way participate in, or contribute to, any publicity concerning, or in any way relating to the execution or the terms of this Agreement, including, but not limited to, press releases, media or social media.

**ORDER**

Based on the foregoing, plaintiffs' motion to approve the settlement is GRANTED. The confidentiality provision is stricken, except as set forth above. This case is dismissed with prejudice. The clerk shall close the file.

SO ORDERED.

Dated: August 30, 2016

HOWARD R. LLOYD
United States Magistrate Judge

5:15-cv-03164-HRL Notice has been electronically mailed to:

Amy Sharyl Williams   awilliams@cdflaborlaw.com

Ashley Halberda   ahalberda@cdflaborlaw.com, manderson@cdflaborlaw.com

Daniel S Brome   dbrome@nka.com, assistant@nka.com

Matthew C Helland   helland@nka.com, assistant@nka.com

Todd Robin Wulffson   TWulffson@CDFLaborLaw.com, jfelde@cdflaborlaw.com